# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 22 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Samsung Galaxy S10+ cellular telephone ) Case No. 19MJ5194
Seizure No. 2019-2504-002288-01 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Joseph Kopec

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Joseph Kopec, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/21/19

_____
Judge's signature

City and state: San Diego, CA   Hon. Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Joseph Kopec, Special Agent, being duly sworn do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), for the following electronic device seized from David Jesus HERNANDEZ GARCIA on September 2, 2019:

   (1) Samsung Galaxy S10+ cellular telephone
   Seizure No. 2019-2504-002288-01
   (hereinafter the **Target Device**)

2. The **Target Device** was seized from HERNANDEZ GARCIA at the time of his arrest. It is believed that the **Target Device** was used by HERNANDEZ GARCIA to communicate with coconspirators during a drug smuggling event involving methamphetamine within the Southern District of California, in S.D. Cal. Case No. 19cr3883-AJB. Probable cause exists to believe that the **Target Device** contains evidence relating to violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. The **Target Device** is currently in the possession of HSI, located at 880 Front Street, San Diego, California 92101.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Device** for and to seize the items set forth in Attachment B (incorporated herein) which I believe will be found in the item to be searched as described in Attachment A (incorporated herein).

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The

1

evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

5. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since February 2018. I am currently assigned to the Special Agent in Charge, San Diego Office, National Security Group. I have training and experience in multiple investigative areas, to include conducting investigations and making arrests based on violations of Title 21, United States Code.

6. I have received approximately 26 weeks of intensive training at the Federal Law Enforcement Training Center at Glynco, Georgia. These 26 weeks were comprised of approximately 12 weeks of the basic Criminal Investigator Training Program and approximately 14 weeks of Homeland Security Investigations Special Agent Training. I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations. Prior to working for HSI, I was employed as a United States Border Patrol Agent for approximately six years, and routinely made arrests for violations of Titles 8 and 21, United States Code. I hold a Bachelor of Arts degree in Political Science from the University of Illinois at Urbana-Champaign.

7. I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their

2

criminal activities. This is particularly true in cases involving distributable quantities of controlled substances, such as methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking and controlled substance manufacture and distribution investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Conspirators involved in the manufacture, distribution and importation of controlled substances and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular telephones because they can easily arrange to meet co-conspirators and or potential buyers at predetermined locations.

   f. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to notify or

3

    warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  g. Conspirators involved in the manufacture, distribution and importation of controlled substances often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

  h. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, and experience, that searches of cellular/mobile telephones associated with narcotics smuggling yield evidence:

  a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including,

4

        but not limited to: phone logs, messages, photos, contact lists, and financial records;

   b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or other federally controlled substance within the United States, or conspiracy thereof;

   c.   tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine or other federally controlled substance within the United States, or conspiracy thereof;

   d.   tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine or other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

12. On September 2, 2019, at approximately 5:35 p.m., HERNANDEZ GARCIA applied for entry into the United States through the vehicle lanes at the San Ysidro, California, Port of Entry (POE). HERNANDEZ GARCIA was the driver of a black Toyota Camry bearing California license plate no. 7FSA403 (the vehicle). A U.S. Customs and Border Protection Officer (CBPO) asked HERNANDEZ GARCIA where he was going. HERNANDEZ GARCIA stated he was going to Mira Mesa and had been visiting his mother's grave in Mexico. HERNANDEZ GARCIA stated he had nothing to declare. The CBPO instructed HERNANDEZ GARCIA to open the trunk of the vehicle, and found a spare tire inside. The CBPO used a density buster on the spare tire, and got a

reading between 75 and 80. The CBPO lifted the tire and noted it was very heavy. The vehicle was referred to the secondary lot for further inspection. A CBPO screened the vehicle using the Z Portal and noticed anomalies in the spare tire located in the trunk of the vehicle. An intensive inspection of the vehicle revealed seventeen (17) packages hidden inside the spare tire located in the trunk of the vehicle. The packages, weighing a total of 17.74 kilograms (39.11 pounds), tested positive for a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance.

13. HSI Special Agents Joseph Kopec and Monique Lafontan responded to the POE and HERNANDEZ GARCIA was placed under arrest. At approximately 11:35 p.m., HERNANDEZ GARCIA was advised of his Miranda rights and elected to make a statement. HERNANDEZ GARCIA denied knowledge of the narcotics and stated that he believed he was transporting U.S. currency into the United States from Mexico.

14. Agents seized the **Target Device** from HERNANDEZ GARCIA. HERNANDEZ GARCIA confirmed the **Target Device** belonged to him. HERNANDEZ GARCIA also provided verbal and written consent to search the **Target Device**.[1]

15. Based upon my experience and investigation in this case, I believe that HERNANDEZ GARCIA as well as other persons yet unknown, were involved in an on-going conspiracy to facilitate the movement of narcotics into the United States and beyond. Further, based on my experience investigating narcotics traffickers, I believe that HERNANDEZ GARCIA used the **Target Device** to coordinate with co-conspirators regarding the manufacture, distribution and importation of federally controlled substances, and to otherwise

---

[1] Agents manually searched the **Target Device** at the San Ysidro POE on September 2-3, 2019. No information obtained from the search of the **Target Device** is being offered to support probable cause in this application. Nor has any information seen in the review of the **Target Device** informed the decision to seek this application for a warrant. Because HERNANDEZ GARCIA may proceed to trial, and consistent with a general practice of securing warrants for electronic devices seized at the time of arrest, we are seeking to search the **Target Device**.

6

further this conspiracy within the United States. I also believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further believe that information relevant to the drug trafficking activities of HERNANDEZ GARCIA such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device** described herein.

16. Finally, narcotics trafficking activities require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given these facts, I respectfully request permission to search the **Target Device** for the period of June 3, 2019 up to and including September 3, 2019.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers

now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that HERNANDEZ GARCIA used the **Target Device** to facilitate the offense of importing methamphetamine. Further, the **Target Device** was likely

8

used to facilitate the offense by transmitting and storing data, which is evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

21. Because the **Target Device** was seized during the investigation of HERNANDEZ GARCIA's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by HERNANDEZ GARCIA continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from June 3, 2019 up to and including September 3, 2019.

22. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Joseph Kopec, Special Agent
Homeland Security Investigations

Sworn to before me and subscribed in my presence
before me this ___21___ day of November, 2019

_____
HON. BERNARD G. SKOMAL
United States Magistrate Judge

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

(1) Samsung Galaxy S10+ cellular telephone
Seizure No. 2019-2504-002288-01



**Target Device** is currently in the possession of Homeland Security Investigations located at 880 Front Street, San Diego, California 92101.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 3, 2019 up to and including September 3, 2019.

a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substance within the United States, or conspiracy thereof;

c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substance within the United States, or conspiracy thereof;

d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963.**